IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

FREDERICK WALKER,

      Petitioner,

v.                                                                  CASE NO. 1:14-cv-11-WTH-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner initiated this case by fling a Petition for a Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254.   ECF No. 1.  The Petition stems

from Petitioner's Alachua County jury-trial convictions of fleeing or

attempting to elude a law enforcement officer/high speed chase, driving

while license revoked for being a habitual traffic offender, and reckless

driving, for which Petitioner is serving a 20-year sentence.  ECF No. 1.

The Respondent has filed a Response with relevant portions of the state-

court record, and Petitioner has filed a reply.  ECF Nos. 7, 19.  Upon due

consideration of the Petition, the Response, and the Reply, the

undersigned recommends that the Petition be denied.[1]

## I. **Background**

The relevant trial evidence may be summarized as follows.  Petitioner was charged in an amended information with aggravated assault on a law enforcement officer; aggravated battery on a law enforcement officer; felony fleeing/attempting to elude; felony driving while license revoked; and felony criminal mischief.  ECF No. 7-2 at 22-25 (court reading information to jury).  Following counsels' opening statements, the court read into the record a stipulation signed by Petitioner, his attorney, and the State agreeing that Petitioner's driver's license was suspended or revoked as a habitual traffic offender at the time of the offense.  *Id*. at 37-38.

The State's first witness was University of Florida Police Department Lt. Stacy Ettel.  Lt. Ettel testified that he was on duty on the midnight shift patrol in the early hours of August 8, 2009.  The Gainesville Police Department responded to a robbery at a Kangaroo station at 2300 NW 43rd Street.  Pursuant to a plan to respond to robberies that occurred over the summer, Lt. Ettel deployed officers to gas stations on the perimeter of the

---

[1] Because the Court may resolve the Petition on the basis of the record, the Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

UF campus, and he went to a gas station at 34th Street and West University Avenue.  *Id*. at 46-47.

A BOLO regarding a suspicious white Jeep Cherokee had been issued by the Alachua County Sheriff's office.  Lt. Ettel observed a white Jeep Cherokee southbound on 34th Street.  Lt. Ettel followed the Jeep to the service road off of SW 19th Avenue, next to the Hilton on 34th Street.  A dash camera video from Lt. Ettel's unit was played for the jury.  After the Jeep arrived at the end of the Hilton service road, it turned around and returned to 34th Street, striking another patrol car on the way out.  Lt. Ettel pursued the Jeep by turning south on 34th Street and then east on 20th Avenue, but lost sight of the vehicle.  *Id*. at 48-54.

Another UFPD officer, Sergeant Ledger, radioed that he saw a white Jeep traveling north on 34th Street.  Lt. Ettel then traveled north on 34th Street, ultimately joining multiple other cars that were in pursuit of the Jeep as they entered the town of Lake Butler.  The agencies involved in the chase were the GPD, the ACSO, the UFPD, the Alachua PD, and Bradford and/or Union County officers.  The pursuit covered around 80 miles and reached speeds between 95 and 100 mph.  Lt. Ettel identified Petitioner as the person who was stopped in the white Jeep.  *Id*. at 54-55.

UFPD Sergeant Joseph Gentry testified that he was on motorcycle patrol, wearing his patrol uniform and riding a motorcycle with markings identifying it as a police vehicle, when he responded to a call from Lt. Ettel regarding the white Jeep.  Ettel, Gentry, and Officer Nguyen blocked the Hilton service drive behind the Jeep with Sgt. Gentry using a parked van for cover.  As the Jeep came back up the service road toward the officers, Lt. Ettel tried to avoid a head-on collision and the Jeep accelerated rapidly toward Sgt. Gentry.  Sgt. Gentry leapt off of the motorcycle.  The Jeep missed the motorcycle by inches and struck Officer Nguyen's car, disabling it, before continuing to 34th Street.  Sgt. Gentry attempted to join the pursuit but was unable to catch up to the Jeep despite reaching speeds of 80 to 85 mph.  *Id*. at 64-71.

Officer Nguyen testified that he was driving a "marked patrol unit" that said "Police" on the side, with emergency lights.  Nguyen intended to block the Jeep as it came back up the service road, but it struck his patrol vehicle and rendered it undriveable.  *Id*. at 80-86.

GPD Officer Charles Owens, a K-9 officer, testified that he was driving a marked patrol vehicle (a Crown Victoria) and joined the pursuit of the Jeep as it crossed Highway 441, traveling northbound on SR 121.

Owens took the lead in the pursuit and was directly behind the Jeep, traveling 85 to 90 mph.  The pursuit continued into Union and Bradford Counties before returning to Alachua County.  The Jeep finally stopped after stop sticks were deployed.  *Id*. at 95-100.

ACSO Deputy Sheriff Nigel Lowe testified that he joined the pursuit at NW 53rd Avenue and 34th Street.  He was behind Owens, and the pursuit speed ranged from 45 to 95 mph. *Id*. at 101-102.

UFPD Sergeant William Ledger testified that he responded to the call for backup and assisted in the pursuit of the Jeep.  His dashcam video recording was played for the jury.  After the Jeep stopped, the driver was taken into custody by the ACSO.  Ledger identified the Petitioner as the driver of the Jeep.  On cross-examination, Ledger testified that his vehicle was a "marked Patrol Sergeant's vehicle" and agreed it had various insignia on it identifying it as a patrol vehicle including "stripes and blue lights and siren."  Ledger's lights and siren were on during the chase.  *Id*. at 104-16.

UFPD Fleet Manager James Baker testified that the damage caused to Officer Nguyen's patrol vehicle was the result of a significant impact. The cost of repair was $1408.  *Id*. at 145-56.

The State rested, and the defense rested without putting on any evidence.  *Id*. at 156.  Defense counsel, Stephen Bernstein, moved for a judgment of acquittal based on insufficiency of the evidence on two counts. Specifically, counsel argued that the evidence was insufficient to find Petitioner guilty of aggravated assault on Sergeant Gentry because Petitioner could not see Gentry as he approached him on the service road because Gentry had taken cover behind a van.  Counsel also argued that the evidence was insufficient to establish aggravated battery of Officer Nguyen.  *Id*. at 159-64.  The court denied the motion.  *Id*. at 166.

In closing argument, defense counsel argued, *inter alia*, that the State failed to prove that Petitioner was guilty of fleeing and eluding UFPD Officer Ledger during a high speed chase, as charged in the information. Counsel noted that Ledger followed Petitioner, with his lights and siren on, dropping back when the pursuit reached Highway 441 and another agency took over.  Counsel argued that the evidence did not establish the speed or how much the speed limit was exceeded, and whether there was willful or wanton reckless driving, and therefore the jury could only consider the lesser-included offense of fleeing and eluding.  Counsel also reiterated the stipulation that Plaintiff's license was suspended or revoked with respect to

the offense charged in Count Four.  ECF No. 7-3 at 31-35.

During deliberations, the jury asked to review one of the dashcam videos and also asked for a transcript of unspecified testimony.  The court determined that due to the vague way the question was phrased the court would respond by telling the jury that it could not give them a transcript of the entire trial.  *Id*. at 75, 77.  Defense counsel stated that he was satisfied that the question was answered appropriately.  *Id*. at 78.

For Counts 1 and 2, the jury found Petitioner guilty of the lesser-included offenses of reckless driving.  Petitioner was found guilty of felony fleeing and attempting to elude, high-speed, as charged in Count 3.  He was found guilty of driving while license suspended or revoked, habitual offender, as charged in Count 4, and was acquitted of Count 5, criminal mischief.  *Id*. at 79-80.

Petitioner appealed, arguing that: (1) the State failed to present sufficient evidence that Officer Ledger's vehicle bore agency insignia and other jurisdictional markings, and that counsel provided ineffective assistance by failing to move for an acquittal on that basis; (2) the trial court erred by failing to advise the jury that they had the option to request a read-back of specific portions of testimony; and (3) counsel was ineffective for failing to seek a severance of the offense of driving while license

suspended.  ECF No. 7-4 at 87-108.   The First DCA affirmed, *per curiam*, without written opinion.  *Id*. at 179.

Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850.  Petitioner asserted six ineffective-assistance claims: (1) counsel failed to move for a judgment of acquittal on the proper grounds for the fleeing and eluding charge; (2) counsel failed to object to the trial court's failure to advise the jury that they had the option of requesting a read-back of specific portions of the trial; (3) counsel improperly stipulated that Petitioner's driver's license was revoked as a habitual traffic offender; (4) counsel conceded Petitioner's guilt on Count 4 without Petitioner's consent; (5) counsel failed to seek a severance of Count 4; and (6) cumulative error.  ECF No. 7-5 at 6-25.  The state court summarily denied the motion without an evidentiary hearing.  *Id*. at 32-38.

The instant Petition, which Respondent concedes is timely, followed. Petitioner asserts the same six ineffective-assistance claims that he raised in the state court.  ECF No. 1.

## II.  Section 2254 Standard of Review

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) imposes limitations on the scope of this Court's review.   Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a

writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"  *Burt v. Titlow, ___ U.S. ___,* 2013 WL 5904117, *4 (2013)(quoting *Wood v. Allen*, 558 U.S. 290, 301, 130 S.Ct. 841(2010)).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1); *see Burt*, 2013 WL 5904117, *4 (standard for reviewing claims of legal error by state courts is "highly deferential").   This standard "recognizes a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights."  *Id*.   This highly deferential standard carries special force in

habeas cases asserting ineffective assistance claims: "Especially where a case involves such a common claim as ineffective assistance of counsel under *Strickland*[2]—a claim state courts have now adjudicated in countless criminal cases for nearly 30 years—'there is no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned . . . than his neighbor in the state courthouse.'" *Id*. (quoting *Stone v. Powell*, 428 U.S. 465, 494, n. 35, 96 S.Ct. 3037 (1976)).

In view of the deference afforded to the state courts' adjudication of constitutional claims, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"   *Id*. (quoting *Harrington v. Richter*, 562 U.S. ___, 131 S.Ct. 770, 786–787 (2011).  "'If this standard is difficult to meet'—and it is—'that is because it was meant to be.'" *Id*. (quoting *Harrington*, 131 S.Ct. at 786).  "We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief

_____

[2]*Strickland v. Washington*, 466 U.S. 668, 686 (1984).

is the remedy." *Id.* (quoting *Harrington*, 131 S.Ct. at 786).

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the lawyer's mental processes underlying the strategy."

*Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en

banc).  "No lawyer can be expected to have considered all of the ways [to

provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some
> other reasonable courses of defense (that the lawyer did not
> think of at all) existed and that the lawyer's pursuit of course A
> was not a deliberate choice between course A, course B, and
> so on.  The lawyer's strategy was course A.  And [the Court's]
> inquiry is limited to whether this strategy, that is, course A,
> might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that

counsel's unreasonable conduct might have had "some conceivable effect

on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693. Instead, a

defendant must show a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been

different." *Id*. at 694.  A "reasonable probability is defined as a probability

sufficient to undermine confidence in the outcome."  *Id*.

## III.  Discussion

### A.  Ground One: Failure to Move for JOA Regarding Vehicle Markings

Petitioner contends that his trial counsel was ineffective for failing to

move for a JOA on the fleeing and eluding charge on the basis that the

State failed to establish that there were "agency insignia and other

jurisdictional markings prominently on the vehicle driven by Officer William Ledger."[3]  Petitioner argues that although there was testimony that the vehicles involved in the pursuit were "marked", "[m]ore detailed testimony was required to establish" that Ledger's vehicle "prominently displayed" such markings.  ECF No. 1 at 7.

In rejecting this claim on postconviction review, the state court summarized the trial evidence and concluded that "it is clear from the record as a whole, including the videos, that the officers were in 'authorized law enforcement patrol vehicle[s], with agency insignia and other jurisdictional markings prominently displayed. . . . with siren and lights activated.'  Had counsel moved for a judgment of acquittal on this basis, the motion would have been denied[.]  Thus, Defendant fails to show either error by counsel or prejudice.  Accordingly, the claim raised is without merit."  ECF No. 7-5 at 34.

Petitioner argues that the focus should be on the testimony of Officer Ledger because it was the portion of the pursuit involving Officer Ledger that was the basis for the fleeing-and-eluding charge in the information.

_____

[3]The statute under which Petitioner was charged provides that fleeing/eluding must be from an officer in an "authorized law enforcement patrol vehicle, with agency insignia and other jurisdictional markings prominently displayed on the vehicle, with siren and lights activated[.]" Fla. Stat. § 316.1935(2) (2007).

ECF No. 1 at 10.  As summarized above, Officer Ledger testified that his vehicle was a "marked Patrol Sergeant's vehicle," and agreed that it had "various insignia" on it including "stripes and blue lights and siren." Ledger's lights and siren were on during the chase.  ECF No. 7-2 at 104-16.  Respondent points out that the dashcam video from Officer Ledger's vehicle depicts other police vehicles involved in the pursuit that display agency insignia and other jurisdictional markings.  ECF No. 7 at 18; St. Trial Exh. 3.

As support for his claim, Petitioner relies primarily on *Slack v. State*, 30 So. 3d 684, 687 (Fla. 1st DCA 2010).  In *Slack,* the Defendant moved for a JOA on the basis that the State failed to prove that the vehicle he fled prominently displayed agency insignia.  The officer in *Slack* testified that his vehicle was a "marked patrol car" with lights, but said nothing about "insignia" or other jurisdictional markings.  The First DCA held that the trial court should have granted the motion for JOA, but reversed and remanded for entry of judgment of conviction for the lesser-included offense of fleeing or attempting to elude a law enforcement officer after being instructed to stop.  *Slack*, 30 So.3d at 688.

The Florida Fourth DCA subsequently distinguished *Slack* in a case decided prior to Petitioner's trial, and in which officers testified only that

their vehicles were "marked" but the defendant also admitted he knew they were police.  The Fourth DCA observed that "the purpose of requiring the state to prove that 'the law enforcement officer was in an authorized law enforcement patrol vehicle with agency insignia and other jurisdictional markings prominently displayed' . . . is to guarantee that the defendant "[knew] he had been directed to stop by a duly authorized law enforcement officer [and] willfully refused or failed to stop." *Dumais v. State*, 40 So.3d 850, 853 (Fla. 4th DCA 2010).

Although Petitioner in this case did not admit to knowing that his pursuers were police, it would fly in the face of reason to argue otherwise in view of the record as a whole.  By the time that Officer Ledger joined the pursuit, Petitioner had been pursued and confronted by three other law enforcement officers, Ettel, Gentry, and Nguyen.  Gentry was a uniformed motorcycle officer driving a marked patrol motorcycle, and Nguyen testified that he was driving a "marked patrol unit" that said "Police" on the side, with emergency lights.  ECF No. 7-2 at 64-71, 80-86.

The state court considered the record as a whole in rejecting this claim on postconviction review.  It is, of course, the state court's province to make determinations of state law regarding sufficiency of the evidence, and the state court concluded that a motion for a JOA on this ground would

have been unsuccessful.  Given the state authority reflecting the purpose

of requiring evidence of vehicle markings—to guarantee that the defendant

knew he had been directed to stop by a duly authorized law enforcement

officer—the state court's conclusion in this case is reasonable.  *See*

*Dumais*, 40 So.3d at 853.  Petitioner's counsel elected to focus his defense

arguments on the high-speed aspect of the fleeing-and-eluding charge, a

reasonable strategic decision given the nature of the pursuit in this case

and the multitude of officers, vehicles, and agencies involved in the pursuit.

Moreover, Petitioner has demonstrated no prejudice because under

state law the State could have moved to reopen the case after a motion for

JOA to prove that element.  *See Adkins v. State*, 729 So.2d 955, 956 (Fla.

5th DCA 1998).  The state court's determination that Petitioner failed to

demonstrate either deficient performance or prejudice is not "so lacking in

justification that there was an error . . . beyond any possibility for

fairminded disagreement.'"  *Burt,* 134 U.S. at 15.

### B.  Ground Two: Failure to Object After Jury Request for Transcript

Petitioner argues that the trial court should have informed the jury

that they had the option of requesting a read-back of specific portions of

the trial.  Petitioner contends that counsel performed deficiently by failing to

object after the trial court informed the jury that a trial transcript could not

be provided.  Petitioner contends that such failure by counsel prejudiced him because there is a reasonable probability that he would have received a "better result" had the jury been correctly informed.  ECF No. 1 at 12-13.

In rejecting this claim on postconviction review, the state court concluded that even if counsel erred by failing to ask the court to notify the jury of the possibility of a read-back, Petitioner failed to show prejudice given the verdicts, which included two convictions of lesser-included offenses, an acquittal, a stipulation to his commission of the offense of driving while license suspended or revoked, and overwhelming evidence of Petitioner's guilt on the main fleeing-and-eluding charge.  ECF No. 7-5 at 35.

Petitioner's argument relies on state court decisions holding that it is reversible error for a trial court to fail to inform a jury of the availability of read-back of testimony.  *See Hazuri v. State*, 91 So.3d 836 (Fla. 2012); *State v. Barrow*, 91 So.3d 826 (Fla. 2012).  Both of these now-controlling decisions were rendered two years after Petitioner's trial.  Counsel does not render deficient performance by failing to predict subsequent holdings or changes in the law.  *Black v. United States*, 373 F.3d 1140, 1144 (11th Cir. 2004); *United States v. Ardley*, 273 F.3d 991, 993 (11th Cir. 2001).

Notably, at the time of Petitioner's trial, there was authority both for

and against the proposition that the trial court was not required to advise the jury of the availability of a read-back of testimony. *See, e.g., Hazuri v. State*, 23 So.3d 857 (Fla. 3d DCA Dec. 16, 2009); *quashed*, 91 So.3d 836 (Fla. 2012); *Barrow v. State*, 27 So.3d 211 (Fla. 4th DCA 2010). Further, a decision by defense counsel not to press for a read-back can also be a reasonable strategy. *See Hendricks v. State*, 34 So. 3d 819, 831 (Fla. 1st DCA 2010) *abrogated on other grounds, approved on this ground by Gonzalez v. State*, __ So. 3d __ (Fla. 2014).

Petitioner's claim that he was prejudiced by counsel's asserted failure is wholly speculative. The trial court noted that the jury requested a transcript of *unspecified* testimony. The court determined that due to the vagueness of the question the court could only respond by telling the jury that it could not give them a transcript of the entire trial. The court expressed caution that it not engage in unsolicited dialogue with the jury. ECF No. 7-2 at 75, 77.

Thus, even if counsel had objected, the record does not support a conclusion that the trial court would have then suggested to the jury that it could request a read-back of specific testimony. There is nothing in the

record suggesting that the jury was seeking to review any specific witness' testimony as opposed to requesting a transcript simply for the sake of convenience during deliberations.

Further, as the state court found, the evidence of Petitioner's guilt on the main charge of fleeing and eluding was overwhelming, and Petitioner did not challenge the sufficiency of the evidence to convict him of the lesser-included offenses for which he was found guilty.  On this record, there is not a reasonable probability that the outcome of the proceeding would have been different but for counsel's asserted failure to object.

In sum, Petitioner has failed to show that the state court's rejection of this claim is "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt,* 134 U.S. at 15.

## C.  *Grounds Three and Four: Stipulation Regarding License*

Petitioner alleges that his counsel improperly stipulated that his driver's license was revoked as a habitual traffic offender on the date of the charged offenses and that counsel conceded Petitioner's guilt on Count Four without Petitioner's consent.  ECF No. 1 at 14.  The state court rejected this claim, finding that the record supported the fact that Petitioner

was driving while his license was revoked or suspended.  As support, the court appended Petitioner's DMV record reflecting that Petitioner's license was suspended as a habitual traffic offender at the time of the charged offenses.  ECF No. 7-5 at 36, 43-46.  The court further found that counsel was not ineffective for conceding Petitioner's guilt on Count Four in view of the undisputed evidence showing that Petitioner was driving on the date of the offense while his license was revoked as a habitual offender.  *Id*. at 36-37.

Petitioner claims that his driver's license was last revoked as a habitual offender for five years on February 27, 2003, and therefore the five-year revocation period elapsed on February 27, 2008, prior to the offense charged in Count Four.  ECF No. 1 at 14; *see* ECF No. 7-5 at 43-46.  But as Respondent points out, the expiration of the revocation period is not self-executing.  Under Florida law, the habitual traffic offender designation and suspension or revocation remains with the person until it is removed by the Department upon petition by the person and after investigation of the person's qualification and fitness to drive.  Fla. Stat. § 322.27(5) (2005).  Petitioner's designation and the revocation was never

removed by the state.  Thus, Petitioner has shown no error in the state court's conclusion that Petitioner's license was revoked at the time of the offense, and that counsel was not ineffective for stipulating to that fact.

In view of Petitioner's stipulation regarding his licensing status and the unequivocal evidence that he operated a motor vehicle on the date of the offenses, the state court's determination that counsel was not ineffective for conceding guilt on Count Four also is reasonable.  The Eleventh Circuit has held that it is not ineffective assistance to concede guilt on an "unwinnable" charge in order to preserve credibility with the jury on other charges, and that doing so without first consulting with the client is not presumptively prejudicial.  *Darden v. United States,* 708 F.3d 1225, 1230-33 (11th Cir. 2013).  Rather, the focus is on whether counsel dutifully tested the government's case as a whole.  *Darden*, 708 F.3d at 1232.  In this case, the record as a whole reflects that Petitioner's counsel vigorously tested the State's case and supports a determination that the concession of guilt on Count Four was a reasonable strategic choice.

On this record, the undersigned concludes that Petitioner has failed to show that the state court's rejection of these ineffective-assistance

claims was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"   *Burt,* 134 U.S. at 15.

### D.  Ground Five: Failure to Seek Severance of Count Four

Petitioner alleges that his trial counsel was ineffective for failing to seek a severance of Count Four because the fact that he was a habitual traffic offender was prejudicial to him and alerted the jury to the fact that he had a history of committing traffic offenses.  ECF No. 1 at 16-17.  The state court rejected this claim on postconviction review because the fact that Petitioner was driving with a suspended license was directly related to the other offenses and a motion to sever would have been denied.  ECF No. 7-5 at 37.

Pursuant to Fla. R. Crim. P. 3.152, when "two or more offenses are improperly charged in a single indictment or information, the defendant shall have a right to a severance of the charges upon timely motion thereof." "An offense is improperly charged in a single . . . information when it fails to meet the requirement for joinder of offenses set forth in Florida Rule of Criminal Procedure 3.150 . . . ." *Crossley v. State*, 596 So. 2d 447, 449 (Fla. 1992).  Under Fla. R. Crim. P. 3.150:

[t]wo or more offenses which are triable in the same court may
be charged in the same indictment or information in a separate
count for each offense, when the offenses, whether felonies or
misdemeanors, or both, are based on the same act or
transaction or on two or more connected acts or transactions.

*Crossley*, 596 So. 2d at 449.  Granting or denying a requested severance,

however, is within the trial court's discretion. *State v. Vazquez*, 419 So. 2d

1088, 1090 (Fla. 1982).  Nonetheless, "[a] severance should be granted

liberally when prejudice is likely to flow from refusing the severance." *Id.*

(citing *Menendez v. State*, 368 So. 2d 1278 (1979)).

Again, it is within the province of the state court to make

determinations based on state law.  Here, the state court determined that a

motion to sever would have been unsuccessful under state law because

the charges were directly related.  Nothing in the record suggests that the

charges against Petitioner were improperly joined. The offenses occurred

on the same date as part of the same acts.  Thus, the charges were not

improperly joined under Florida law.

Moreover, Petitioner has not demonstrated that he was prejudiced by

joinder of the charges.  As the State points out, had the charges been

severed the State nevertheless would have offered evidence of Petitioner's

license status to show his motive for fleeing from the officers and the jury would have learned that he was a habitual traffic offender.  Counsel's stipulation to that fact at least arguably minimized the impact of the evidence on the jury.

Petitioner has failed to show that the state court's rejection of this ineffective-assistance claim was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement.'"  *Burt,* 134 U.S. at 15.

### E.  Ground Six: Cumulative Error

Petitioner asserts that he is entitled to federal habeas corpus relief on the basis of counsel's cumulative errors.  ECF No. 1 at 17.  The state court rejected this claim because none of Petitioner's individual grounds had merit.  ECF No. 7-5 at 37.

This is not a cognizable federal claim.  "'[T]he Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Forrest v. Fla. Dept. Of Corrections*, 342 Fed. Appx. 560, 564-65 (11th Cir. 2009)(*per curiam*) (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)); *see also Spears v. Mullin*, 343 F.3d 1215,

1251 (10th Cir. 2003)("Because the sum of various zeroes remains zero, the claimed prejudicial effect of their [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief.").  Accordingly, Petitioner is not entitled to relief on this claim.

## IV.  <u>Certificate of Appealability</u>

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district

judge in the objections permitted to this report and recommendation.

## V.  Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 1, should be **DENIED** and that a COA should be **DENIED.**

**IN CHAMBERS** this 30th day of January 2017.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**